**Teresa FRATUS, Sharon A. Wilson, and Wilma R. Higdon, Appellants–Plaintiffs,**

v.

**MARION COMMUNITY SCHOOLS BOARD OF TRUSTEES and Marion Teachers Association, Appellees–Defendants.**

**No. 27A02–9901–CV–12.**

Court of Appeals of Indiana.

Dec. 27, 1999.

---

Brenda Franklin Rodeheffer, Monday Rodeheffer Jones & Albright, Indianapolis, Indiana, Attorney for Appellants.

Michael J. Kiley, Craig R. Persinger, Kiley, Kiley, Harker, Michael & Certain, Marion, Indiana, Richard J. Darko, Eric M. Hylton, Lowe Gray Steele & Darko, LLP, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellants–Plaintiffs, Teresa Fratus (Fratus), Sharon A. Wilson (Wilson), and Wilma R. Higdon (Higdon) (collectively referred to as the Teachers), appeal the trial court's dismissal of their Complaint filed against Appellees–Defendants, Marion Community Schools Board of Trustees (School Board) and Marion Teachers Association (Association).

We reverse and remand with instructions.

### ISSUES

The Teachers raise two issues for our consideration on appeal, which we restate as follows:

1. Whether the trial court properly dismissed the Teachers' Amended Complaint against the Association when the Teachers failed to exhaust their administrative remedies before the Indiana Education Employment Relations Board (IEERB) prior to filing suit.

2. Whether the trial court properly dismissed the Teachers' Amended Complaint against the School Board when the Teachers failed to exhaust their administrative remedies before the IEERB prior to filing suit.

### FACTS AND PROCEDURAL HISTORY

At the time of filing their Complaint, Fratus, Wilson and Higdon were teachers employed by the School Board and members of the Association. In 1997, each teacher formally notified the School Board of their intention to accept early retirement in 1998 pursuant to the terms of the 1995–1997 Master Contract between the School Board and the Association. After the Teachers gave their notice of their intention to elect early retirement, the Association and the School Board renegotiated the Master Contract. The Association is the exclusive representative of all the

teachers within its bargaining unit pursuant to the Certificated Educational Employee Bargaining Act (CEEBA), Ind. Code § 20–7.5–1. The 1998 Master Contract in general gave more benefits to the teachers of the Marion Community Schools; however, the contract greatly reduced the benefits to those teachers who elected to take early retirement in 1998. The School Board and the Association notified the Teachers that the 1998 Master Contract controlled their retirement benefits. Due to the revision in the Master Contract, the Teachers lost approximately $30,000 in retirement benefits.

The Teachers' Amended Complaint alleges a breach of duty of fair representation against the Association and a breach of contract claim against the School Board. The Association filed a motion to dismiss the Teachers' Complaint pursuant to Ind. Trial Rule 12(B)(1) and 12(B)(6). The School Board filed an Answer and Affirmative Defenses asserting that the Teachers lacked standing, the Teachers failed to state a claim upon which relief can be granted, the trial court lacked subject matter jurisdiction, and that the Teachers failed to exhaust their administrative remedies.

After a hearing on the Association's motion to dismiss, the trial court dismissed the Teachers' Complaint pursuant to T.R. 12(B)(1) concluding that the trial court lacked subject matter jurisdiction as a result of the Teachers' failure to exhaust their administrative remedies before the IEERB. This appeal ensued.

## DISCUSSION AND DECISION

### Jurisdiction

We initially address the issue of this court's jurisdiction as raised by the School Board in its Appellee's Brief. The School Board argues that the trial court's Order of Dismissal is not a final appealable order under Ind.Appellate Rule 4(A), because the trial court dismissed this case without prejudice, expressly giving the Teachers the right to refile after they exhausted their administrative remedies. This argument is without merit. A dismissal of an action based on T.R. 12(B)(1) would typically be without prejudice, because the case is being dismissed without being decided on its merits. "A dismissal under Trial Rule 12(B)(1) is not an adjudication on the merits nor is it res judicata. A plaintiff thus is free to refile the action in the same tribunal or another tribunal that has jurisdiction." *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind.1994). However, just because the Teachers have an opportunity to refile, does not mean that *this case* has not been finally determined. "A final appealable order, or judgment of the court, is one which disposes of all issues as to all parties thereby ending the particular case." *Doperalski v. City of Michigan City*, 619 N.E.2d 584, 585 (Ind.Ct.App.1993). The granting of a motion to dismiss is a final appealable judgment. *State ex rel. Clay Community Schools v. Parke Circuit Court*, 271 Ind. 266, 392 N.E.2d 804, 805 (1979). Therefore, the order of the trial court dismissing the Teachers' Amended Complaint is a final appealable order, and this appeal is properly before this court.

### Standard of Review

When ruling on a T.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, the trial court must decide whether it possesses the authority to further adjudicate the action. *Common Council of City of Hammond v. Matonovich*, 691 N.E.2d 1326, 1328 (Ind.Ct.App. 1998), *trans. denied.* A T.R. 12(B)(1) motion to dismiss is decided based upon a consideration of the complaint, the motion, and any affidavits or other evidence submitted. *Id.* Further, the court may weigh the evidence to determine the existence of jurisdictional facts. *Id.*

"Lack of subject matter jurisdiction is an affirmative defense which may be raised in the pleadings, see T.R. 8(C), or on motion under 12(B)(1)." *Perry*, 637

N.E.2d at 1286. Here, the Association filed a motion to dismiss based on T.R. 12(B)(1) and the School Board filed an affirmative defense claiming the trial court lacked subject matter jurisdiction pursuant to T.R. 8(C). Thus, both defendants properly raised the issue of subject matter jurisdiction in the trial court. Moreover, "the absence of subject-matter jurisdiction is never waivable and there is a positive duty on a court, whether trial or appellate, to raise the question of subject-matter jurisdiction whenever it might appear ..." 1 WILLIAM F. HARVEY, INDIANA PRACTICE § 12.5 (2nd ed. 1987). Thus, it was appropriate for the trial court to decide the subject matter jurisdiction issue regarding both defendants, even though the Association was the only defendant to file a motion to dismiss.

In reviewing a trial court's dismissal of an action based on lack of subject matter jurisdiction under T.R. 12(B)(1), we review the trial court's decision *de novo* when the facts are not in dispute. *Riehe-man v. Cornerstone Seeds, Inc.*, 671 N.E.2d 489, 491 (Ind.Ct.App.1996), *trans. denied.* The parties herein are not disputing the determining facts of this case and all parties agree that the Teachers did not file a claim with IEERB prior to filing the lawsuit at issue. Thus, our review of this matter will be *de novo.*

### Exhaustion of Administrative Remedies

The intent of the CEEBA is to develop "harmonious and cooperative relationships between school corporations and their certificated employees," to recognize "the right of school employees to organize" and to "prevent any material interference with the normal public school educational process." Ind.Code § 20–7.5–1–1.

The CEEBA sets forth the specific rights of school employees and school employers, at Ind.Code § 20–7.5–1–6, as follows:

(a) School employees shall have the right to form, join, or assist employee organizations, to participate in collective bargaining with school employers through representatives of their own choosing, and to engage in other activities, individually or in concert for the purpose of establishing, maintaining, or improving salaries, wages, hours, salary and wage related fringe benefits, and other matters as defined in sections 4[1] and 5[2] of this chapter. A school employee may not be required to join or financially support through the payment of fair share fees, representation fees, professional fees, or other fees, a school employee organization. A rule, regulation, or contract provision requiring financial support from a school employee to a school employee organization is void.

(b) School employers shall have the responsibility and authority to manage and direct in behalf of the public the operations and activities of the school corporation to the full extent authorized by law. Such responsibility and activity shall include but not be limited to the right of the school employer to:

(1) direct the work of its employees;

(2) establish policy through procedures established in sections 4 and 5 of this chapter;

---

1. Ind.Code § 20–7.5–1–4 provides: "A school employer shall bargain collectively with the exclusive representative on the following: salary, wages, hours, and salary and wage related fringe benefits. A contract may also contain a grievance procedure culminating in final and binding arbitration of unresolved grievances, but such binding arbitration shall have no power to amend, add to, subtract from or supplement provisions of the contract."

2. Ind.Code § 20–7.5–1–5 provides in pertinent part: "(a) A school employer shall discuss with the exclusive representative of certificated employees, and may but shall not be required to bargain collectively, negotiate, or enter into a written contract concerning or be subject to or enter into impasse procedures ..."

(3) hire, promote, demote, transfer, assign, and retain employees through procedures established in sections 4 and 5 of this chapter;

(4) suspend or discharge its employees in accordance with applicable law through procedures established in sections 4 and 5 of this chapter;

(5) maintain the efficiency of school operations;

(6) relieve its employees from duties because of lack of work or other legitimate reason through procedures established in sections 4 and 5 of this chapter; and

(7) take actions necessary to carry out the mission of the public schools as provided by law.

The IEERB is the administrative agency created by the General Assembly to administer the provisions of the CEEBA. Ind.Code § 20–7.5–1–9. The IEERB hears "unfair practices" complaints by school employees. Ind.Code § 20–7.5–1–7 defines "unfair practices" as:

(a) It shall be an unfair practice for a school employer to:

(1) interfere with, restrain or coerce school employees in the exercise of the rights guaranteed in Section 6 of this chapter.

(2) dominate, interfere or assist in the formation or administration of any school employee organization or contribute financial or other support to it; provided, that subject to rules and regulations made by the governing body, a school employer may permit school employees to confer with the school employer or with any school employee organization during working hours without loss of time or pay;

(3) encourage or discourage membership in any school employee organization through discrimination in regard to hiring or tenure of employment or any term or condition of employment;

(4) discharge or otherwise discriminate against a school employee be-

cause he has filed a complaint, affidavit, petition, or given any information or testimony under this chapter;

(5) refuse to bargain collectively or discuss with an exclusive representative as required by any provisions of this chapter;

(6) fail or refuse to comply with any provision of this chapter.

(b) It shall be an unfair practice for a school employee organization or its agents to:

(1) interfere with, restrain or coerce (a) school employees in the exercise of the rights guaranteed by this chapter, or (b) a school employer in the selection of its representatives for the purpose of bargaining collectively, discussing or adjusting grievances. This paragraph shall not impair the right of a school employee organization to prescribe its own rules with respect to the acquisition or retention of membership therein.

(2) cause or attempt to cause a school employer to discriminate against an employee in violation of subsection (a);

(3) refuse to bargain collectively with a school employer, if the school employee organization is the exclusive representative;

(4) fail or refuse to comply with any provision of this chapter.

 Thus, the question at hand is whether the Teachers' claims come within the purview of the foregoing statutes, and if so, whether they were required to file their claims with the IEERB as a jurisdictional prerequisite to filing their Complaint. If the Teachers were required to file their claims with the IEERB, the trial court's order was correct as "[a] party's failure to exhaust its administrative remedies creates a jurisdictional defect and makes a T.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction appropriate." *Common Council of City of Hammond,* 691 N.E.2d at 1328–1329. However, we must first determine if their

claims come within the jurisdiction of the IEERB.

### A. *The Teachers' Claim Against the Association*

 The Teachers claim that the Association breached its duty of fair representation by negotiating a new Master Contract for 1998 which greatly reduced their early retirement benefits. The Teachers also claim that the Association colluded with the School Board to deprive them of these benefits. In renegotiating the Master Contract for 1998, the Teachers assert that the Association had an obligation to preserve the early retirement benefits the Teachers elected in 1997.

Additionally, the Teachers contend that they were not required to file their claims against the Association with the IEERB because a breach of the duty of fair representation is not an "unfair practice" listed in the CEEBA. Ind.Code § 20–7.5–1–7.

In response, the Association acknowledges that it owes the Teachers a duty of fair representation; however, the Association contends that the Teachers are required to file their claim with the IEERB because the IEERB has assumed jurisdiction over such claims in the past. The Association argues that:

> It is [a] well-settled principle of law that an agency's interpretation of the statutory scheme it administers is entitled to judicial deference. Another recognized rule of statutory construction is that if the legislature fails to change a statute administered by a state agency, then this inaction indicates the legislature's acquiescence in and satisfaction with the administrative construction. A long adhered to administrative interpretation dating from the legislative enactment, with no subsequent change having been made in the statute involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts.

*Board of School Trustees of Marion Community Schools v. Marion Teachers Ass'n,* 530 N.E.2d 309, 311 (Ind.Ct.App.1988) (citations omitted).

In support of their position, the Teachers rely on *Fort Wayne Education Association, Inc. v. Aldrich,* 527 N.E.2d 201 (Ind. Ct.App.1988). In *Aldrich,* we held that: "we find no grant of authority for the IEERB to intervene in disputes between employees and employee organizations." *Id.,* at 217. The Association contends that the *Aldrich* case is distinguishable because it dealt with a dispute regarding the collection of fair share fees between a teachers' union and school employees. The Association further argues that the *Aldrich* court held that the IEERB could not intervene in the dispute because the portion of the CEEBA that prohibits the encouraging or discouraging of membership in school employee organizations, Ind.Code § 20–7.5–1–7(a)(3), only pertains to claims against a school employer and not claims against school employee organizations. However, in *Aldrich,* we additionally held that Ind. Code § 20–7.5–1–7(b) also did not allow for the involvement of the IEERB in that matter. *Id.* at 216 n. 11. Section 7(b) pertains to unfair labor practices by a school employee organization and, as mentioned, section 7(a) pertains to unfair labor practices by a school employer.

Moreover, even though *Aldrich* may be factually distinguishable from the case at bar, the discussion set forth therein regarding the interpretation of the CEEBA is relevant to our decision today. In *Aldrich,* we held that "an administrative agency has only those powers conferred on it by the General Assembly; powers not in its legislative grant cannot be assumed by the agency nor implied to exist in its powers." *Id.,* at 216. We further noted that in construing a statute, the definition of terms provided by the legislature are controlling. *Id.* Also "recognizing what the statute does not say is just as important as recognizing what it does say." *Id.* at 215.

Thus, we conclude that because a claim for breach of duty of fair representation by

a school employee is not listed as an "unfair practice" under Ind.Code § 20–7.5–1–7, or specifically included elsewhere within the CEEBA, the IEERB did not have jurisdiction over the Teachers' claims for breach of fair representation. Accordingly, we find that the trial court improperly dismissed the Teachers' Amended Complaint against the Association for lack of subject matter jurisdiction.

### B. *The Teachers' Claim Against the School Board*

 The Teachers' claims against the School Board are based on breach of contract. They claim that they are parties to the Master Contract between the Association and the School Board and that the School Board breached this contract by repudiating its obligation under the provisions of the 1997 Master Contract with regard to the Teachers' early retirement benefits. The School Board claims that the Teachers' benefits are governed by the 1998 contract. The Teachers claim their benefits should be determined by the 1997 contract, as they made their election for early retirement in 1997 providing a one year notice of their intent to take early retirement as required by the 1997 Master Contract.

Further, the Teachers argue that their claims against the School Board for breach of contract are outside the jurisdiction of the IEERB. The Teachers additionally note that subsequent to the dismissal of this action in the trial court, they filed a claim with the IEERB against the School Board based on breach of contract and fraud. The IEERB dismissed the Teachers' administrative claims against the School Board due to lack of subject matter jurisdiction. The IEERB decided that it had no jurisdiction over the Teachers' claims because they were based in contract and tort. (Teachers' App. to Reply Brf., p. 6).[3]

The Teachers conclude that the trial court erred in dismissing their action against the School Board for failure to exhaust administrative remedies because there were no administrative remedies to exhaust. We agree. The Teachers' claims against the School Board sound in contract and tort and accordingly, were well within the trial court's subject matter jurisdiction. The IEERB was established to hear claims concerning unfair labor practices and other claims raised under the CEEBA. However, the IEERB does not have jurisdiction to hear the Teachers' contract and tort claims against the School Board as these claims are unrelated to unfair labor practices.

Therefore, we conclude that the trial court improperly dismissed the Teachers' Amended Complaint against the School Board based on lack of subject matter jurisdiction.[4]

### CONCLUSION

Thus, we conclude that the trial court improperly dismissed the Teachers'

---

3. Neither the School Board nor the Association has objected to the Teachers' submission to this court of a certified copy of IEERB's April 27, 1999 Order dismissing the Teachers' administrative proceedings against the School Board, which was included in the Teachers' Appendix to their Reply Brief. This Order was issued subsequent to the filing of the Appellants' Brief and is not part of the Record of Proceedings. Because there have been no objections to the Appendix by the Appellees and in consideration of the interests of judicial economy, we refer to the Teachers' Appendix. However, we reach our decision independent of the findings of the IEERB set forth in the Teachers' Appendix.

4. Rather than responding to the Teachers' argument that the trial court had subject matter jurisdiction to hear their claims against the School Board, the School Board instead argues that the Teachers lack standing to bring their action. The School Board contends that if an action for breach of contract is appropriate, it should properly be brought by the Association and not by individual Teachers. However, the trial court did not dismiss the Teachers' Amended Complaint based on standing; rather it was dismissed for lack of subject matter jurisdiction. Consequently, the issue of the Teachers' standing to bring this action is not before this court.

Amended Complaint. Accordingly, we reverse and remand this matter with instructions to the trial court to reinstate the Teachers' Amended Complaint.

Reversed and remanded with instructions.

GARRARD, J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting

The Marion Community Schools Board of Trustees correctly identifies the threshold issue in this case, *i.e.*, may individual teachers sue their school employer for breach of contract, based upon the enforcement of a contractual provision that was bargained for under CEEBA? I believe that the trial court was correct in determining that it lacked subject matter jurisdiction because the teachers failed to exhaust their administrative remedies, and I therefore respectfully dissent from the majority's conclusion to the contrary.

By statute, teachers have the right to form or join teachers' unions, which in turn may be designated as the teachers' exclusive representative in collective bargaining with school employers for the purpose of establishing, maintaining, or improving salaries, wages, hours, salary and wage-related fringe benefits. Ind.Code Ann. § 20–7.5–1–6 (West 1994); IC § 20–7.5–1–10. Such occurred here. In 1998, the Association negotiated a Master Contract with the Schools that included a revision of the previous Master Contract with respect to early retirement benefits. The individual teachers who comprise the appellants in this action filed a complaint against the School Board concerning the School Board's decision to implement the early retirement provision contained in the 1998 Master Contract, rather than the applicable provision in the earlier contract.

In my view, in order to succeed in this action, the appellants must first show that the Association breached its duty of fair representation in approving the revised early retirement provision in the 1998 Master Contract. *See Thomas v. LTV Corp.*, 39 F.3d 611 (5th Cir.1994) (breach of union's duty of fair representation is an "indispensable predicate" to an employee's direct action against his or her employer under the National Labor Relations Act).[1] Such would constitute an action for unfair labor practices. *See* IC § 20–7.5–1–7(b). Under IC § 20–7.5–1–11, parties alleging unfair labor practices must first file such complaints before the Indiana Education Employees Relation Board. *See Evansville–Vanderburgh School Corp. v. Roberts*, 464 N.E.2d 1315 (Ind.Ct.App.1984). The failure to first seek a remedy before the IEERB divests the Grant Circuit Court of jurisdiction in the instant action. *Id.*

Finally, I note that IC § 20–7.5–1–7(c) provides specifically that school employers or school employee organizations may "bring suit for specific performance and/or breach of performance of a collective bargaining contract in any court having jurisdiction thereof." School employees are conspicuously omitted from the group that may bring individual actions in state courts. This omission is significant to me, and indicates that, until they have exhausted the prescribed administrative remedies, the appellants may not sue the school individually concerning the implementation of a provision that was the product of collective bargaining between the Association and the School Board.

I would affirm the trial court.

---

1. I note in this regard that the appellants alleged in their complaint that the Association "breach[ed] ... the duty of fair representa- tion," which "is a violation of Ind.Code § 20–7.5–1–1 et seq." *Record* at 89.