Teresa FRATUS, Sharon A. Wilson,
and Wilma B. Higdon, Appellants–
Plaintiffs,

v.

MARION COMMUNITY SCHOOLS BOARD OF TRUSTEES, and Marion Teachers Association, Appellees–Defendants.

No. 27S02–0005–CV–295.

Supreme Court of Indiana.

June 6, 2001.

7. *Id.* § 35–50–2–5.

Brenda Franklin Rodeheffer, Monday, Rodeheffer Jones & Albright, Indianapolis, Indiana, Attorney for Appellants.

Michael J. Kiley, Craig R. Persinger, Kiley, Kiley Harker, Michael & Certain, Marion, Indiana, Attorneys for Appellee Marion Community Schools Board of Trustees.

Richard J. Darko, Eric M. Hylton, Lowe Gray Steele & Darko, LLP, Indianapolis, Indiana, Attorneys for Appellee Marion Teachers Association.

Karen M. Freeman–Wilson, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Amicus Curiae.

## ON PETITION TO TRANSFER

RUCKER, Justice

In a two-count complaint three former teachers sued their union and their school board over a dispute concerning a reduction in retirement benefits. The complaint alleged that the union breached its duty of fair representation and that the school board breached the terms of a collective bargaining agreement. On grounds that the teachers failed to exhaust their administrative remedies, the trial court dismissed the complaint for lack of subject matter jurisdiction. In a split decision, the Court of Appeals reversed the trial court's judgment concluding that exhaustion of remedies was unnecessary. *Fratus v. Marion Cmty. Schs. Bd.,* 721 N.E.2d 280 (Ind.Ct.App.1999). We grant transfer and affirm in part and reverse in part the judgment of the trial court.

### Facts and Procedural History

Teresa Fratus, Sharon Wilson, and Wilma Higdon ("Teachers") were employed as classroom teachers in the Marion public school system. In 1997, Teachers gave formal notice to the Marion Community Schools Board of Trustees ("School Board") of their intent to accept early retirement the following year. Teachers anticipated that their retirement benefits would be calculated under the terms of a then existing collective bargaining agreement known as the 1995 1997 Master Contract. Teachers were members of the Marion Teachers Association ("Union"), the exclusive bargaining unit for teachers in the Marion public school system. Shortly after Teachers gave written notice of their intent, the Union and the School Board renegotiated the agreement and produced a 1997–2000 Master Contract. When Teachers retired, the School Board paid them benefits according to the new agreement under which their early retirement benefits were dramatically reduced.

Teachers filed a complaint alleging that the Union renegotiated the collective bargaining agreement to reduce retirement benefits and thus breached its duty of fair representation. The complaint also alleged that the School Board breached its contract with Teachers by failing to pay retirement benefits as outlined in the original Master Contract. On motion by the School Board and the Union, the trial court dismissed Teachers' complaint under Indiana Trial Rule 12(B)(1) for lack of subject matter jurisdiction. On review, a divided Court of Appeals reversed the judgment of the trial court.

### Standard of Review

In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion, but also any affidavits or evidence submitted in support. *Perry v. Stitzer Buick GMC, Inc.,* 637 N.E.2d 1282, 1287 (Ind.1994). In addition, the trial court may weigh the evidence to determine the existence of requisite jurisdictional facts. *Id.* Our standard for reviewing the trial court's ruling on a motion to dismiss for lack of subject matter jurisdiction is dependent upon whether the trial court resolved disputed facts and if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a paper record. *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001). Where as here, the facts before the trial court are undisputed we review the trial court's ruling de novo. *Id.*

### Discussion

#### I. Teachers' claim against the Union

At the heart of the parties' argument is the question of whether Teachers

were required to file their complaint with the Indiana Education Employment Relations Board ("IEERB") before they were entitled to judicial review. As the Court of Appeals noted, "[i]f the Teachers were required to file their claims with the IEERB, the trial court's order was correct as [a] party's failure to exhaust its administrative remedies creates a jurisdictional defect and makes a T.R. 12(B)(1) motion to dismiss for lack of subject matter jurisdiction appropriate." *Fratus*, 721 N.E.2d at 285 (quotation omitted).

■ The Certificated Educational Employee Bargaining Act ("Act") recognizes the right of school employees to organize and collectively bargain through school employee associations. Ind.Code § 20–7.5–1–1(b). The Act creates a method to resolve unfair practices by both school employers and school employee organizations. To obtain relief from unfair practices, a school employee may file a complaint with the IEERB,[1] which then hears and decides the claim. I.C. § 20–7.5–1–11; *Evansville–Vanderburgh Sch. Corp. v. Roberts*, 464 N.E.2d 1315, 1317 (Ind.Ct.App.1984). Once the IEERB takes final action, a school employee may petition for judicial review. I.C. § 4–21.5–5–4, 5. In sum, a person may file a petition for judicial review only after exhausting all administrative remedies available within the agency authorized to exercise judicial review. I.C. § 4–21.5–5–4; *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1224 (Ind.2000), *amended on reh'g in part by* 737 N.E.2d 719 (Ind.2000); *State Bd. of*

*Tax Comm'rs v. Mixmill Mfg. Co.*, 702 N.E.2d 701, 704 (Ind.1998) ("Administrative agencies have technical expertise in areas that the courts do not. [I]n nearly all circumstances their rulings are required before resort to a court is available.").

Teachers contend they are not required to pursue this matter through the IEERB because the agency has no authority to adjudicate claims of a union's breach of duty of fair representation. In support, Teachers point out that the Act defines "unfair practice" and the definition does not include the breach of duty of fair representation.

■ Teachers are correct that the Act does not specifically list the duty of fair representation as an unfair practice. If this were the end of the analysis, then we would be compelled to conclude that Teachers were not required first to pursue administrative remedies through the IEERB. However, the question of whether the breach of the duty of fair representation is an unfair practice is a case of first impression in Indiana. When interpreting an Indiana statute for the first time, it is appropriate to look to the decisions of other jurisdictions that construe identical statutory provisions. *Bd. of Comm'rs of County of Knox v. Wyant*, 672 N.E.2d 77, 79–80 (Ind.Ct.App.1996). The National Labor Relations Act ("NLRA") is the federal counterpart to the Act. The two are nearly identical with many parallel provisions and similar language.[2] We therefore

---

1. The IEERB is the administrative agency created to administer the provisions of the Act. I.C. § 20–7.5–1–9.

2. For example, compare Indiana Code section 20–7.5–1–7(b) that reads: "It shall be an unfair practice for a school employee organization or its agents to: (1) interfere with, restrain or coerce (a) school employees in the exercise of the rights guaranteed by this chap-

ter ...." with 29 U.S.C.A. § 158(b) (1998) that states: "It shall be an unfair labor practice for a labor organization or its agents—(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title...."

Also compare Indiana Code section 20–7.5–1–6(a) that reads: "School employees shall have the right to form, join, or assist employ-

look to federal case law for guidance. *See Indiana Civ. Rights Comm'n v. County Line Park,* 738 N.E.2d 1044, 1048 (Ind. 2000) (relying on federal case authority interpreting the federal Fair Housing Act as a guide to interpreting Indiana's Fair Housing Act).

In 1935, Congress enacted the NLRA, which allows employees to bargain collectively through representatives of their own choosing. 29 U.S.C.A. § 157 (1998). Through its enactment, Congress intended to exercise whatever constitutional power given to it to regulate commerce by adopting measures to prevent or control specified unfair labor practices that provoke or tend to provoke strikes or labor disturbances affecting interstate commerce. *NLRB v. Fainblatt,* 306 U.S. 601, 607, 59 S.Ct. 668, 83 L.Ed. 1014 (1939). Congress defined what it meant by unfair labor practices and gave the National Labor Relations Board ("NLRB") authority to hear and decide such claims. 29 U.S.C.A. §§ 158(b), 160 (1998). Any person aggrieved by the NLRB's final order may seek judicial review. 29 U.S.C.A. § 160(f) (1998).

 Just as the Act does not include fair representation claims in its catalog of "unfair practices" by school employee organizations, the NLRA also does not specifically list it as an "unfair practice" by labor organizations. *See* 29 U.S.C.A. § 158(b) (1998). Nonetheless, federal case authority identifies such a breach by labor organizations as an "unfair labor practice"

under NLRA. *See Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) ("It is now well established that, as the exclusive bargaining representative of the employees in [complainant's] bargaining unit, the Union had a statutory *duty fairly to represent* all of those employees, both in its collective bargaining with [employer] and in its enforcement of the resulting bargaining agreement." (citations omitted) (emphasis added)). As one court explained:

> This fiduciary *duty of fair representation* in the negotiation, administration and enforcement of collective bargaining agreements has been imposed upon unions by federal law as an obligation correlative to the right of a union to represent all the employees in a bargaining unit as their exclusive bargaining agent despite the contrary wishes of a minority.... It has since been expanded as a principle of general application to collective bargaining representatives, who are required to "serve the interest of all members without hostility or discrimination toward any, to exercise [their] discretion with complete good faith and honesty, and to avoid arbitrary conduct."

*Bazarte v. United Transp. Union,* 429 F.2d 868, 871 (3d Cir.1970) (emphasis added). We agree with the rationale of the federal courts and conclude that a breach of the duty of fair representation by a school employee organization is an unfair labor practice under the Act.[3] According-

---

ee organizations, to participate in collective bargaining with school employers through representatives of their own choosing ...." with 29 U.S.C.A. § 157 (1998) that states: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing...."

**3.** This conclusion is supported also by the doctrine of legislative acquiescence. Al-

though not binding, "[a] long adhered to administrative interpretation dating from the legislative enactment, with no subsequent change having been made in the statute involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts." *Ind. Bell Tel. Co., Inc. v. Indiana Utility Reg. Comm'n,* 715 N.E.2d 351, 358 (Ind.1999). The Certificated Educational Employee Act was first enacted in 1973. For at least a quarter of a century the IEERB has

ly, Teachers' claim against the Union is a matter for exclusive IEERB determination. However, this does not mean that the trial court lacks jurisdiction over the entire case. Because another of Teachers' claims is within the trial court's jurisdiction, as explained in greater detail below, although the trial court must refer to the IEERB that portion of Teachers' complaint asserting claims against the Union, the trial court nonetheless retains jurisdiction over the entire case until the IEERB reaches a final decision. Thereafter the trial court may address all claims properly before it.

### II. Teachers' claim against the School Board

 Asserting that the School Board failed to pay them according to the terms of the collective bargaining agreement in place at the time the retirement notices were given, Teachers complain the School Board breached its contract. As such, according to Teachers, "[t]his case is and was a proper matter of jurisdiction for the trial court." Br. of Appellant at 15. The construction of contracts and actions for their breach are matters of judicial determination. *Austin Lakes Joint Venture v. Avon Utils., Inc.*, 648 N.E.2d 641, 649 (Ind.1995); *Suyemasa v. Myers*, 420 N.E.2d 1334, 1339 (Ind.Ct.App.1981). This is not a matter over which administrative bodies generally assume jurisdiction, at least with respect to a freestanding claim. *See Austin Lakes*, 648 N.E.2d at 650 (finding no legal or factual questions reserved for agency decision making in a breach of contract claim). By dismissing Teachers'

complaint in total, the trial court effectively denied Teachers the only forum before which their breach of contract claim against the School Board could be heard and decided. Indeed, sometime after the trial court entered its judgment, Teachers presented their claim to the IEERB, which dismissed it asserting "the Complainants have alleged a purely contractual issue—that is, pursuant to which contract is the School Corporation obligated to pay retirement benefits to Complainants—over which IEERB has no jurisdiction." App. to Reply Br. of Appellant at 6 (quoting Order of IEERB Hearing Examiner). We conclude therefore that the trial court erred in dismissing Teachers' claim against the School Board. Rather, this is a claim over which the trial court has jurisdiction.

 Having determined that Teachers' claim against the Union is a matter for the exclusive jurisdiction of the IEERB, we are confronted here with a case where one of the issues is a matter for administrative determination while the other is a matter for the court to decide. In that instance we invoke the doctrine of primary jurisdiction which:

> comes into play when a claim is cognizable in a court but adjudication of the claim "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of [an] administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views."

*Austin Lakes*, 648 N.E.2d at 645 (quoting *Hansen v. Norfolk & W. Ry. Co.*, 689 F.2d

---

interpreted the Act as including the duty of fair representation as an unfair practice and has routinely adjudicated such clams. *See, e.g., Ruth Ann Teague*, U–76–5–4690, 1976–77 IEERB Ann. Rep. 593 (1976–77); *Independent Educators of Fort Wayne, Inc.*, U–83–3–0235, 1983 IEERB Ann. Rep. 103 (1983); *Sondra G. Estep*, U–92–06–4710, 1994 IEERB Ann. Rep. 111 (1994); *Margaret M. Bunce*, U–95–26–

0235, 1996 IEERB Ann. Rep. 70 (1996); *Linda C. Sharp*, U–98–11–2940, 1998 IEERB Ann. Rep. 26 (1998); *Carolyn Ursey*, U–98–13–5705, 1999 IEERB Ann. Rep. (1999). If the General Assembly were dissatisfied with IEERB's long-standing interpretation, we presume it would have amended the Act accordingly.

707, 710 (7th Cir.1982)). In *Austin Lakes,* we set forth the analysis the trial court should undertake when confronted with cases in which its subject matter jurisdiction is contested on grounds of primary jurisdiction or exhaustion of remedies. *Id.* at 646–49. We also identified various fact patterns under which the issue might arise. *Id.* For example, under one scheme, where an issue in the case is one that can be decided by either the trial court or by an administrative agency, the decision to invoke the doctrine of primary jurisdiction is within the trial court's discretion. *Id.* at 647. However, "a trial court must invoke the doctrine of primary jurisdiction where one (but less than all) of the issues in the case requires exhaustion of remedies before judicial review can occur." *Id.* That is precisely the set of facts we have before us. The trial court in this case must determine one of the issues while the other must first be presented to an administrative agency before judicial review may occur. Thus, while the trial court retains jurisdiction over Teachers' contract claim against the School Board, applying the doctrine of primary jurisdiction requires the trial court to suspend any action on the merits until the IEERB renders a final decision on Teachers' claim against the Union.

### Conclusion

We affirm that portion of the trial court's judgment dismissing Teachers' complaint against the Union. In all other respects, the judgment of the trial court is reversed. We remand this cause to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.