The **INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT,** Appellant–Respondent,

v.

**NJK FARMS, INC.,** Appellee–Petitioner.

No. 49A02–0902–CV–123.

Court of Appeals of Indiana.

Feb. 18, 2010.

Gregory F. Zoeller, Attorney General of Indiana, David L. Steiner, Frances Barrow, Timothy Junk, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Donn H. Wray, Mickey J. Lee, Stewart & Irwin, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

In this interlocutory appeal, the Indiana Department of Environmental Management ("IDEM") appeals the trial court's order finding it in breach of a settlement agreement with NJK Farms, Inc., ("NJK"). We reverse and remand.

### Issues

IDEM raises four issues, but we find one issue dispositive: whether the trial court had subject matter jurisdiction. Consequently, we do not address the remaining issues raised in the appeal.[1]

---

1. IDEM also argues that the trial court erred when it found that IDEM had breached a

## Facts[2]

In May 1989, NJK was formed for the purpose of acquiring land for use as a solid waste landfill. NJK then acquired land in Fountain County to operate a landfill, to be known as the Greenview Landfill. Triple G Landfills, Inc. ("Triple G") entered into an option agreement with NJK to purchase the land. On November 7, 1991, Triple G filed an application with IDEM for a solid waste facility permit. IDEM denied Triple G's permit application on May 15, 1995, after Triple G failed to "submit additional information to support the Demonstration of Need pursuant to 329 IAC 2–8–12" as requested by IDEM. Appellant's App. p. 21. Triple G filed a timely petition for administrative review.

On July 12, 1996, NJK filed a motion to substitute NJK for Triple G as the real party in interest. NJK alleged that Triple G had failed to make the required payments under the option agreement and that Triple G's option interest in the property had reverted to NJK, "the owner of the real estate and now the owner of the permit application." *Id.* at 31. In November 2000, an administrative law judge ("ALJ") with the Office of Environmental Adjudication ("OEA") found that NJK did not have a property right to the landfill permit application and denied NJK's mo-

tion. The ALJ also dismissed Triple G's petition for administrative review.

NJK filed a petition for judicial review with the Marion County Superior Court on December 12, 2000. In conjunction with the petition for judicial review, NJK and George Pendygraft, as president of NJK and in his individual capacity, filed a complaint for damages against IDEM, OEA, the commissioner of IDEM at the time, the former commissioner of IDEM, and the ALJ. In the complaint for damages, NJK and Pendygraft alleged that the defendants had violated their rights under 42 U.S.C. § 1983, that the denial of the landfill permit was a taking, that their rights under Article 1, Section 12 of the Indiana Constitution had been violated, and that they were entitled to attorney fees under 42 U.S.C. § 1988. NJK and Pendygraft requested damages in excess of $30,000,000. The defendants removed the case to federal court, but on May 23, 2002, the federal district court remanded the petition for judicial review to the Marion Superior Court and retained jurisdiction over NJK and Pendygraft's complaint for damages.

After the petition for judicial review was remanded to the Marion Superior Court, on September 12, 2005, NJK and IDEM

settlement agreement with NJK and that the trial court erred when it found IDEM was subject to damages for breaching the settlement agreement. Because it is unnecessary that we address whether IDEM breached the settlement agreement, it is also unnecessary for us to address NJK's many arguments that IDEM waived issues regarding the alleged breach of the settlement agreement.

2. IDEM filed a motion to strike the statement of facts in NJK's brief. We agree that NJK's brief contains a statement of facts that is rife with argument, which is inappropriate in that part of an appellate brief. *See, e.g., County Line Towing, Inc. v. Cincinnati Ins. Co.,* 714 N.E.2d 285, 289–90 (Ind.Ct.App.1999), *trans.*

*denied.* A statement of facts should be a concise narrative of the facts stated in accordance with the standard of review appropriate to the judgment or order being appealed, and it should not be argumentative. *Id.;* Ind. Appellate Rule 46(A)(6). Due to the complexity of the facts here, we have not stricken NJK's statement of the facts, but we recommend that NJK's counsel follow Indiana Appellate Rule 46(A)(6) in future filings.

NJK argues in its appellee's brief that IDEM failed to comply with Indiana Appellate Rule 46(A)(4), Indiana Appellate Rule 46(A)(6), and Indiana Appellate Rule 46(A)(8). Our review of IDEM's brief reveals no such failure to comply with the Appellate Rules.

entered into a "Settlement Agreement," which provided:

(1) NJK shall pay to IDEM an amount of $31,300 which amount is to be used by IDEM as reimbursement for any and all costs associated with the actions required of IDEM under this Settlement Agreement. $15,650 will be paid upon submission of the need demonstration information referred to in paragraph 3 below. $15,650 will be paid upon submission of the document referred to in paragraph 6 below.

(2) IDEM has previously determined that a need demonstration for 3,000,-000 tons of in place waste capacity has been made for the Greenview Landfill, the denial of which application is the subject matter of the pending litigation.... Letters in support of the need demonstration obtained by NJK after the date of the denial support a need demonstration for 7,000,000 tons of in place capacity for the Greenview Landfill.

(3) Given the amount of time that has transpired, NJK will submit updated or new need demonstration letters from solid waste management districts and/or Indianapolis/Marion County. NJK shall have 45 days from the effective date of this agreement to submit the needs demonstration material required by 329 IAC 10–11–7 in addition to the need demonstration letters and a total in place disposal capacity, in cubic yards (1,200 lbs. per cubic yard), for the proposed landfill. IDEM will review the information provided, and within 15 days after the closure of the comment period specified in paragraph 4 below, issue a letter indicating whether adequate need has been demonstrated for the proposed landfill capacity.

(4) Within 15 days after a complete need demonstration documentation, referred to in Paragraph 3 above, has been submitted to and received by IDEM a 30 day public comment period will be public noticed by IDEM relative to the need demonstration documentation.

(5) Upon said determination, if acceptable to NJK, the parties will stipulate within the pending litigation that the issues of NJK's right to pursue a permit application and need for the Greenview Landfill in the specified amount have been settled and resolved.

(6) NJK will submit within 90 days after the filing of the stipulation described in paragraph 5, above, in a format specified by IDEM a document that provides all of the information required by 329 IAC 10 for the purpose of IDEM determining whether the redesigned Greenview Landfill meets all applicable IDEM requirements in effect as of the date of this referenced submittal, including a design that provides for an in place capacity at the Greenview Landfill that is no more than that amount as approved by IDEM pursuant to Paragraph 3 above.

(7) A. In accordance with IC 13–15–8 within 10 days of submitting the document referenced in paragraph (6) above, Greenview Landfill will make a reasonable effort to provide notice to all adjoining land owners and occupants that a permit application has been submitted.

B. IDEM shall conduct a completeness review of the document described in paragraph 6 above. If the document is found incomplete, IDEM shall send NJK a notice of deficiency

detailing the additional information required to make the submission complete. If NJK's response to this notice of deficiency remains incomplete, IDEM shall send NJK a notice of insufficient response. Once IDEM finds the submission complete in accordance with IC 13 and 329 IAC 10, IDEM shall issue a notice of completeness. NJK shall hold a public meeting within sixty (60) days after it receives this notice in accordance with the criteria given at 329 IAC 10–12–1(d). IDEM shall hold a public hearing in conjunction with this hearing, and public notice it in accordance with 329 IAC 10–12–1(i). In addition, NJK shall place a copy of the complete submission at an area library located near Greenview Landfill within five (5) days after receipt of the notice of completeness. IDEM shall continue a technical review of the compete submission. If this review finds the submission technically deficient, IDEM shall send NJK a notice of deficiency outlining needed corrections. IF NJK's response to this notice of deficiency remains incomplete, IDEM shall send NJK a notice of insufficient response. Once IDEM finds that the complete submission meets the criteria of 329 IAC 10 and IC 13–19–4, IDEM shall issue the permit. If IDEM finds that the redesigned Greenview Landfill does not satisfy the requirements of 329 IAC 10 and IC 13–19–4, or if NJK finds the permit proposed to be issued by IDEM as unacceptable, then the pending litigation will not be dismissed and the parties each reserve any and all of their rights under the pending litigation. The parties further acknowledge that the requirements of IC 13–20–2–1 must be met before a permit can be issued.

(8) Any of the dates referenced in this Settlement Agreement may be extended by the written, mutual agreement of the parties.

(9) Consistent with the terms of this Settlement Agreement, the parties will stipulate to a stay of the pending litigation.

Appellant's App. pp. 85–86. The Settlement Agreement was signed by NJK's counsel, IDEM's counsel, and the assistant commissioner of IDEM.

Pursuant to paragraph 5 of the Settlement Agreement, after NJK submitted acceptable needs demonstration documentation, the parties filed a stipulation with the trial court in which they agreed "that the issues of NJK's right to pursue a permit application and need for the Greenview Landfill in the specified amount have been settled and resolved." *Id.* at 83. The parties agreed that the action would remain on the docket but stayed pending completion of the activities detailed in paragraphs 6 and 7 of the Settlement Agreement. On February 15, 2006, the trial court approved the stipulation.

Although NJK had 90 days to submit a complete application, it requested and IDEM granted five extensions of the time limit. On April 30, 2007, NJK made an updated permit application to IDEM. IDEM performed a completeness review and, on October 1, 2007, IDEM advised NJK that certain items were not complete. IDEM gave NJK until December 1, 2007, to submit the requested information, and NJK met this deadline. NJK then filed a motion with the trial court alleging that IDEM had breached the Settlement Agreement by giving NJK only sixty days to submit the requested information. However, the parties later filed a motion to stay a determination of NJK's motion concerning the alleged breach.

On February 12, 2008, IDEM informed NJK that its application was "complete" and that IDEM would proceed with "technical review." *Id.* at 208. IDEM also notified NJK that the "determination of completeness triggers time frames for completing the public process requirements of 329 IAC 10–12–1." *Id.* IDEM then placed the permit application in a local library for public review and published notice of the 60–day public comment period. A public hearing was held on March 25, 2008, and at a citizen's request, IDEM extended the comment period to May 3, 2008.

During the 60–day comment period, the Indiana legislature passed Indiana Code Section 13–20–2–10, which became effective on March 24, 2008, and concerned permits for solid waste landfills in counties without comprehensive zoning regulations.[3] *See* P.L. 114–2008, § 17 (eff. Mar. 24, 2008). At the time the statute was enacted, Fountain County had not enacted a zoning ordinance under Indiana Code Section 36–7–4. However, Fountain County

enacted comprehensive zoning regulations on April 28, 2008, which included regulations for landfills.

On June 19, 2008, IDEM informed NJK that, due to the newly enacted Indiana Code Section 13–20–2–10, NJK must "submit a new application for an original construction permit for the facility and meet the requirements of all applicable environmental laws existing at the time the new permit is sought." Appellant's App. p. 182. IDEM also noted that Fountain County had enacted a zoning ordinance and "[a]s is standard practice, IDEM [would] look for proper zoning as part of the completeness checklist for any new landfill permit application." *Id.* IDEM also identified a list of technical deficiencies from its review of NJK's permit application that should be addressed in any new application.

NJK did not file a new permit application or remedy the list of technical deficiencies. Rather, on August 1, 2008, NJK

---

**3.** Indiana Code Section 13–20–2–10 provides:
(a) This section applies only:
(1) in a county that does not zone under IC 36–7–4; and
(2) to a facility:
 (A) that is proposed to be constructed after April 1, 2008;
 (B) that is not exempt under IC 13–20–1–1 from the demonstration of needs requirements of IC 13–20–1; and
 (C) for which a permit for construction or operation is required under this article.
(b) If:
(1) a person submitted to the department before April 1, 2008:
 (A) an application under this chapter for an original construction permit for a facility;
 (B) a modification of an application under this chapter previously submitted to the department for an original construction permit for a facility; or
 (C) an application under this chapter for modification of an original construction permit issued by the department under this chapter; and

(2) the department did not issue the permit or modified permit applied for as described in subdivision (1) before April 1, 2008;
the person must submit a new application for an original construction permit for the facility and meet the requirements of all applicable environmental laws existing at the time the new permit is sought.
(c) The fee under IC 13–20–21–3 does not apply to the new application for an original construction permit under subsection (b).
(d) The county executive of a county in which a facility is proposed to be located must adopt an ordinance approving the proposed facility location before the department may issue an original construction permit in response to:
(1) a new application for an original construction permit for the facility under subsection (b); or
(2) an application for an original construction permit for the facility submitted to the department after March 31, 2008.

filed a motion with the trial court alleging that IDEM was in "total breach" of the Settlement Agreement by: (1) requiring NJK to submit a new application; (2) requiring NJK to meet the requirements of all applicable environmental laws existing at the time of the new application; (3) refusing to "accept that NJK had a de jure permit" and review the April 2007 document as a "minor modification;" (4) giving NJK only sixty days to respond to IDEM's October 2007 letter; (5) allowing a public comment period after the public hearing and extending the public comment period; (6) discontinuing the technical review and failing to send NJK a notice of deficiency; and (7) failing to issue a permit to NJK. *Id.* at 161. NJK sought damages for IDEM's alleged "total breach" of the Settlement Agreement. *Id.* at 165.

On August 8, 2008, IDEM notified NJK that, because it had failed to request additional time or submit a new application, its application dated April 30, 2007, was denied. IDEM also informed NJK that it could challenge the decision by filing a petition for review with the OEA within 18 days. NJK responded by filing a motion with the trial court alleging that IDEM was in contempt. NJK also filed a petition for review with the OEA, in which NJK requested that the OEA dismiss the petition for review because the trial court had subject matter jurisdiction. The ALJ ap-

parently stayed the petition for review pending the ruling of the trial court.[4]

After briefing and argument, on November 20, 2008, the trial court found that it had "exclusive jurisdiction to consider the proceedings incidental to this sole application pertaining to the 'Greenview Landfill.'" *Id.* at 13. The trial court "advised" the OEA of this decision and directed that a copy of the order be forwarded to the ALJ. The trial court also found that the Settlement Agreement was a "contract" and that the Settlement Agreement was enforceable against IDEM pursuant to Indiana Code Section 34–13–1–1. The trial court determined that IDEM had breached the Settlement Agreement because the newly enacted Indiana Code Section 13–20–2–10 did not apply to Fountain County, which had enacted a zoning ordinance on April 28, 2008. The trial court set the matter for a trial on damages. The trial court also concluded that IDEM was not in contempt. The trial court then certified its order for interlocutory appeal on two issues: (1) whether IDEM breached the Settlement Agreement; and (2) whether NJK could seek damages for the alleged breach. We accepted jurisdiction over this interlocutory appeal pursuant to Indiana Appellate Rule 14(B).[5]

### Analysis[6]

On appeal, IDEM argues that the trial court did not have subject matter

4. On appeal, NJK filed an addendum that included the OEA's final order from March 24, 2009, which was entered after the trial court issued its order in this action. IDEM has requested that this document be stricken because it was not part of the record below. Because we hold that the trial court did not have subject matter jurisdiction, we need not consider whether it is proper for this court to take judicial notice of the OEA's order. Thus, we granted the motion to strike.

5. NJK initially filed a motion to transfer this action to our supreme court pursuant to

Indiana Appellate Rule 56(A), and our supreme court denied that motion.

6. We must pause to note several mischaracterizations in NJK's appellee's brief. For example, NJK states:

IDEM's unwillingness to apply Section 11 to Fountain County and the Greenview Landfill on or after April 28, 2008 springs from the fact, which IDEM admits in its Appellant's Brief (p. 31), that Section 11, even when applied to Greenview Landfill, would not provide IDEM any colorable ba-

jurisdiction to consider NJK's argument that IDEM breached the Settlement Agreement. "If the facts before the trial court are undisputed, then an issue of subject matter jurisdiction presents a pure question of law and is reviewed de novo." *M–Plan, Inc. v. Indiana Comprehensive Health Ins. Ass'n,* 809 N.E.2d 834, 837 (Ind.2004). That is the case here.

■ Initially, NJK argues that the subject matter jurisdiction issue was not certified for interlocutory appeal by the trial court, and NJK asks that we strike the portion of IDEM's brief addressing the issue. NJK's argument fails for two reasons. First, our supreme court has noted that interlocutory appeals are taken from orders, not issues. *Harbour v. Arelco, Inc.,* 678 N.E.2d 381 (Ind.1997) (discussing predecessor to Indiana Appellate Rule 14). Indiana Appellate Rule 14(B) provides that "[a]n appeal may be taken from other interlocutory orders if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal." In *Harbour,* the court held that "[t]he rule does not require or even permit certification of particular issues. Rather it requires certification of an interlocutory or-

der." *Id.* at 386. Any issues that were properly raised in the trial court in ruling on the trial court's order are available on interlocutory appeal.[7] *Id.; see also Tom–Wat, Inc. v. Fink,* 741 N.E.2d 343, 346 (Ind.2001) (noting that "an interlocutory appeal raises every issue presented by the order that is the subject of the appeal"). Similarly, in *Budden v. Board of School Commissioners of City of Indianapolis,* 698 N.E.2d 1157, 1165 n. 14 (Ind.1998), our supreme court held:

> [A]lthough the trial court certifies an order, there is nothing to prohibit the trial court from identifying the specific questions of law presented by the order for the appellate court's review. Indeed, it is often helpful if this occurs. Certification of a question, rather than the technically proper certification of an order, is inconsequential error as long as it is clear what order is affected. Any decisional law suggesting the contrary is disapproved.

Consequently, the trial court's subject matter jurisdiction, which was raised to the trial court, is available on interlocutory appeal. *See* Appellant's App. p. 315–16 (arguing that administrative review of

sis on which to repudiate and breach the Settlement Agreement.

Appellee's Br. p. 26. Page 31 of IDEM's brief mentions "Section 11" only once and states that the statute "does not apply as it applies to situations where a valid permit was issued prior to April 1, 2008, which is not this case." Appellant's Br. p. 31. IDEM does not admit or even imply on page 31 of its brief that the statute would not provide "IDEM any colorable basis on which to repudiate and breach the Settlement Agreement."

Further, NJK argues that "IDEM acknowledged in Appellant's Brief (p. 16) that I.C. § 13–20–2–10 was 'a change in controlling law occurring after the agency action' and that the 'interests of justice' would be served by resolution of this issue by this Court." Appellee's Br. p. 33 n.15. Pages 15 and 16 of IDEM's brief argue that the AOPA applies and

that NJK's arguments should have been presented to the OEA. IDEM goes on to note: "*At the very most,* the changes to Indiana Code section 13–20–2–10 may have been 'a change in controlling law occurring after the agency action,' and the trial court *may have had jurisdiction* to determine whether this statute applied to NJK's application." Appellant's Br. p. 16. IDEM's alternative argument can hardly be considered an acknowledgment that the trial court had jurisdiction to consider the applicability of Indiana Code Section 13–20–2–10.

7. *But see Coca–Cola Co. v. Babyback's Int'l, Inc.,* 841 N.E.2d 557, 561 n. 2 (Ind.2006) (stating in footnote that some of the issues presented by the co-appellant in that case "were not among the issues certified for interlocutory appeal").

IDEM's denial of the permit application was required prior to judicial review).

Moreover, a claim of lack of subject matter jurisdiction cannot be waived. *Town Council of New Harmony v. Parker*, 726 N.E.2d 1217, 1223 n. 8 (Ind.2000), *amended on reh'g on other grounds*, 737 N.E.2d 719 (Ind.2000). "Where lack of subject matter jurisdiction in the original tribunal is apparent from the record, it is the duty of the reviewing court to raise and determine the issue sua sponte." *Id.* The failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction. *Id.* at 1224. Thus, IDEM's claim that NJK failed to exhaust its administrative remedies is a claim that the trial court did not have subject matter jurisdiction, which cannot be waived. Consequently, we will address IDEM's argument that the trial court did not have subject matter jurisdiction to consider NJK's arguments.

In its November 2008 order, the trial court found that it had "exclusive jurisdiction to consider the proceedings incidental to this sole application pertaining to the 'Greenview Landfill,'" that the Settlement Agreement was a "contract," and that the Settlement Agreement was enforceable against IDEM pursuant to Indiana Code Section 34–13–1–1. Appellant's App. pp. 13–15. We acknowledge that, in general, the carrying out of a settlement agreement should be controlled in the court that approved it, and the breaching of a settlement by one of the parties is actionable. *Harding v. State*, 603 N.E.2d 176, 179 (Ind.Ct.App.1992). However, the circumstances here are different than the typical breach of a settlement agreement action.

We noted those differences regarding settlements in the administrative law context in *Indiana Bell Telephone Company Inc. v. Office of Utility Consumer Counselor*, 725 N.E.2d 432, 435 (Ind.Ct. App.2000). There, we held that "the term 'settlement' carries a different connotation in administrative law and practice than in typical civil actions." *Indiana Bell Tel.*, 725 N.E.2d at 435.

> More specifically, a settlement agreement that must be filed with and approved by a regulatory agency "loses its status as a strictly private contract and takes on a public interest gloss." *Citizens Action Coalition of Ind., Inc. v. PSI Energy, Inc.*, 664 N.E.2d 401, 406 (Ind.Ct.App.1996). Because such an agreement is "more closely akin to an order of the Commission," *Cajun Elec. Power Coop., Inc. v. F.E.R.C.*, 924 F.2d 1132, 1135 (D.C.Cir.1991), a failure to comply with its terms is not usefully characterized as a breach of contract which would give rise to traditional contract law remedies such as money damages.

*Id.* (footnote omitted). This difference was highlighted on December 9, 2008, just a few days after the trial court issued its order, when our supreme court decided *Ind. Department of Environmental Management. v. Raybestos Products Co.*, 897 N.E.2d 469 (Ind.2008), *reh'g granted on other grounds*, 903 N.E.2d 471 (Ind.2009), which we find controlling here.

In *Raybestos*, IDEM sent Raybestos a "Special Notice of Potential Liability" regarding the cleanup of PCBs. 897 N.E.2d at 471. IDEM and Raybestos entered into an agreed order regarding the cleanup. Pursuant to the agreed order, Raybestos prepared a risk assessment, which concluded that the PCB levels posed no human health risk, and IDEM approved the risk assessment. IDEM suggested that Raybestos perform a "hot spot" removal rather than clean the entire site. *Id.* A successor IDEM commissioner disagreed, and IDEM determined that the risk as-

sessment had been approved in error. IDEM and Raybestos were unable to agree on a cleanup level, and Raybestos filed a petition for administrative review with the OEA. The OEA concluded that Raybestos had waived its right to review of IDEM's actions, but on judicial review, the trial court disagreed and ordered IDEM to reinstate its approval of the risk assessment. IDEM did not appeal that order.

During this time, IDEM also encouraged the EPA to require a more complete cleanup, and the EPA issued an order requiring a cleanup of the site that was substantially more expensive than the "hot spot" removal. *Id.* at 472. Raybestos filed a complaint claiming that IDEM had breached its contract, i.e., the agreed order. Raybestos sought damages from IDEM for the more expensive cleanup and future expenses. The trial court found that IDEM's communications with EPA had breached the agreed order, and the trial court ordered IDEM to pay more than $16,000,000 in damages.

On appeal, our supreme court noted that Raybestos was seeking the damages under Indiana Code Section 34–13–1–1, which permits claims against the State arising out of express or implied contracts. The supreme court considered two issues: (1) whether the agreed order was subject to challenge only under the Indiana Administrative Orders and Procedures Act ("AOPA"), Indiana Code Section 4–21.5–1–1 to –7–9; and (2) whether the agreed order qualified as a contract under Indiana Code Section 34–13–1–1.

First, the court noted that the AOPA "establishes the exclusive means for judicial review of an agency action." *Id.* at 474 (citing Ind.Code § 4–21.5–5–1). Although several agencies and agency actions are exempt from the AOPA, neither IDEM nor the agreed order is among

them. *Id.* (citing I.C. §§ 4–21.5–2–4, –5). The court found that IDEM was "plainly" an agency and that the agreed order and the communications with the EPA were agency actions. *Id.* Consequently, our supreme court concluded that the exclusive means for review of the agency's actions was by petition for review by the OEA.

Next, our supreme court addressed the applicability of Indiana Code Section 34–13–1–1, which allows claims against the State for breach of express or implied contracts. The court noted that agency contracts for acquisition, leasing, or disposition of property and the procurement of goods or services are exempted from the AOPA. *Id.* at 475 (citing I.C. § 4–21.5–2–5). Such contracts with agencies must be in writing and approved by the Commissioner of the Indiana Department of Administration, the Director of the Indiana State Budget Agency, and the Attorney General. *Id.* (citing I.C. §§ 4–13–2–14.1, –14.2). The court concluded that such contracts supported a claim for damages, but that the agreed order was "not such a contract" and was not exempted from the AOPA. *Id.* at 476. Money damages are not authorized under the AOPA, "presumably reflecting the General Assembly's policy judgment that specific performance is a more appropriate remedy for agency error than a damages award ultimately borne by the taxpayers." *Id.* at 475.

Finally, the court noted that "[t]he Agreed Order does not purport to forbid IDEM's communication with EPA, and IDEM could not bind itself to fail to carry out its statutory obligations, including compliance with the federal regulations requiring communication between the agencies." *Id.* at 477. The court remanded to the trial court with instructions to vacate the judgments in favor of Raybestos and dismiss the complaint for lack of subject matter jurisdiction.

■ Here, IDEM is clearly an agency subject to the AOPA.[8] *See id.* at 474; I.C. § 4–21.5–2–4. The question is whether IDEM's entry into the Settlement Agreement and IDEM's actions following the Settlement Agreement regarding NJK's permit application were "agency actions." *See* I.C. § 4–21.5–2–5. NJK insists that *Raybestos* is inapplicable and that IDEM's entry into the Settlement Agreement was a contract, not an agency action, because it arose out of a judicial, not administrative, proceeding.[9] We do not find NJK's attempts to distinguish *Raybestos* persuasive.

Although the agreed order in *Raybestos* was entered into during the administrative proceeding rather than after the petition for judicial review was filed, we see no practical difference between the circumstances in *Raybestos* and the circumstances here. Under NJK's interpretation, if the parties enter into an agreement to resolve issues during the administrative process, the AOPA would apply and damages could not be awarded for a breach of the agreement; but if the parties entered into an agreement to resolve issues after a petition for judicial review was filed, the AOPA would not apply and the agency could be liable for damages under Indiana Code Section 34–13–1–1. Such an interpretation would lead to illogical results contrary to the purpose of the AOPA.

■ Finally, we also note that, under NJK's interpretation, the trial court would have had exclusive jurisdiction over NJK's entire permit application process as a result of the Settlement Agreement. However, under that interpretation, the trial court would have immediate jurisdiction to review IDEM's denial of NJK's permit on any basis, such as a denial based upon technical engineering requirements. The purpose of administrative review of agency decisions is to allow the agency "to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review." *Austin Lakes Joint Venture v. Avon Util., Inc.*, 648 N.E.2d 641, 644 (Ind.1995) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975)). Clearly, it is better for such issues to be presented in the typical administrative review process prior to consideration by the trial court. The administrative review process allows IDEM to correct its own mistakes and allows those with the requisite expertise a first look at the issues. The purpose of the December 2000 petition for judicial review was to review the OEA's determination that NJK was not a real party in interest and the OEA's denial of Triple G's permit application. Those issues were "resolved and settled" by the parties. Appellant's App. p. 83. The judicial review did not confer jurisdiction on the Marion Superior Court to directly review all further actions of IDEM regarding NJK's permit application.[10]

8. NJK argues that its motion for a finding of "total breach" was not subject to the AOPA because the trial court was not a state agency. The relevant inquiry here is whether IDEM is a state agency, not whether the trial court is a state agency.

9. NJK also argues that *Raybestos* is inapplicable and that IDEM's entry into the Settlement Agreement was a contract, not an agency action, because it was a "voluntary, bilateral"

action of both IDEM and NJK. Appellee's Br. p. 31. However, both the agreed order in *Raybestos* and the Settlement Agreement here were also "voluntary, bilateral" actions. Consequently, NJK's argument is not persuasive.

10. NJK argues that, even if the Settlement Agreement is subject to the AOPA, the trial court still had jurisdiction under *Town Board of Orland v. Greenfield Mills, Inc.*, 663 N.E.2d

We conclude that, under *Raybestos*, IDEM's entry into the Settlement Agreement and IDEM's actions following the Settlement Agreement regarding NJK's permit application were "agency actions" to which the AOPA applies. *See* I.C. §§ 4–21.5–5–1; 4–21.5–2–5. As such, the AOPA provides the exclusive means to review IDEM's actions, and the trial court did not have subject matter jurisdiction to consider NJK's arguments.[11] Further, damages for the alleged breach of the Settlement Agreement under Indiana Code Section 34–13–1–1 are not allowed. As noted in *Raybestos*, money damages are not authorized under the AOPA. *Raybestos*, 897 N.E.2d at 475 (citing I.C. § 4–21.5–5–15).

## Conclusion

We conclude that the trial court did not have subject matter jurisdiction to consider NJK's allegations that IDEM breached the Settlement Agreement. Rather, under

*Raybestos*, those claims are subject to the AOPA and NJK must exhaust its administrative remedies as required by the AOPA. Moreover, NJK's request for damages is not cognizable under the AOPA. We reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

MATHIAS, J., and BROWN, J., concur.

523 (Ind.1996). In *Orland,* our supreme court held:

> If all of the issues or claims are clearly matters for exclusive administrative or regulatory agency determination, the court is without subject matter jurisdiction and must dismiss the complaint. Conversely, where at least one of the issues or claims is within the jurisdiction of the trial court, the entire case falls within its jurisdiction.

663 N.E.2d at 525. We conclude that all of the issues in this action are matters for exclusive administrative determination. Moreover, even if at least one of the issues was within the trial court's jurisdiction, under *Austin Lakes Joint Venture,* 648 N.E.2d at 646, the trial court would, "while retaining jurisdiction over the case, ... refer an issue or some subset of issues in the case to the expert agency for its opinion or final decision."

NJK also argues that "[i]f there were any basis for the position argued by IDEM that AOPA precluded this adequate remedy at law [i.e., damages for the breach of the Settlement Agreement], which there isn't, then the power of equity would be invoked to step in and prevent the injustice IDEM has rained down upon NJK." Appellee's Br. 42. Given the

applicability of the AOPA and its clear limitation on remedies, we decline NJK's invitation to "invoke" the power of equity.

11. We note that, after the parties reached the Settlement Agreement, they filed a stipulation with the trial court in which they agreed "that the issues of NJK's right to pursue a permit application and need for the Greenview Landfill in the specified amount have been settled and resolved." Appellant's App. p. 83. The parties agreed that the action would remain on the docket but stayed pending completion of the activities detailed in paragraphs 6 and 7 of the Settlement Agreement, and the trial court approved the stipulation.

The parties' request that the action remain on the docket and their request that the trial court stay the proceedings pending completion of the Settlement Agreement did not confer subject matter jurisdiction on the trial court. "The parties by consent or agreement cannot confer subject matter jurisdiction on a court." *City of Marion v. Howard,* 832 N.E.2d 528, 531 (Ind.Ct.App.2005), *trans. denied.* Thus, in deciding whether the trial court possessed subject matter jurisdiction, the parties' stipulation is irrelevant.