**FOR PUBLICATION**



ATTORNEYS FOR APPELLANT,
Threaded Rod Company, Inc.:

**DAVID A. TEMPLE**
**SEAN T. DEVENNEY**
**SCOTT P. FISHER**
Carmel, Indiana

ATTORNEYS FOR APPELLANT,
Moran Electric Company, Inc.:

**GLENN D. BOWMAN**
**NICHOLAS K. GAHL**
**MARC A. MENKVELD**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE,
Indiana Department of Environmental
Management:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
**TIMOTHY J. JUNK**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE,
City of Indianapolis:

**CAMERON GREGORY STARNES**
Office of Corporation Counsel
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MORAN ELECTRIC SERVICE, INC., and THREADED ROD COMPANY, INC., | ) ) ) |
| Appellants-Proposed Intervenors, | ) ) |
| vs. | ) ) |
| COMMISSIONER, INDIANA DEPARTMENT OF ENVIRONMENTAL MANAGEMENT, | ) ) ) |
| Appellee-Plaintiff, | ) |

CITY OF INDIANAPOLIS,          )
                           )
      Appellee-Intervenor,      )    No. 49A02-1305-MI-432
                           )
ERTEL MANUFACTURING CORP.,  )
                           )
      Defendant.            )

---

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
Cause No. 49D07-1002-MI-6915

---

**April 21, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Threaded Rod Company, Inc., ("Threaded Rod") and Moran Electric Service, Inc., ("Moran") (collectively, "Appellants") appeal the trial court's denial of their motions to intervene and motions for preliminary injunction in litigation between the Indiana Department of Environmental Management ("IDEM"), the City of Indianapolis ("the City"), and Ertel Manufacturing Corporation ("Ertel"). We reverse and remand.

**Issues**

Appellants raise two issues, which we restate as:

    I.      whether the trial court properly found that it did not have subject matter jurisdiction over Appellants' claims; and

    II.     whether the trial court properly denied Appellants' motions to intervene.

2

**Facts**

Ertel and Appellants are the former or current owners of adjacent properties located in Indianapolis. The properties are contaminated with hazardous chemicals. There is some dispute as to whether the contaminants on the Appellants' sites originated on those sites or flowed from the Ertel site. IDEM has demanded that the properties be remediated.

In 2008, the City brought a civil action against Ertel to compel Ertel to reimburse the City for its clean-up costs. In 2009, the trial court entered summary judgment for the City and found that Ertel was liable to the City for cleanup costs.

In 2010, IDEM brought a civil action against Ertel asserting claims under Indiana Code Chapter 13-25-4 and seeking a declaration that Ertel would be responsible to IDEM for past and future costs associated with the cleanup of the hazardous substances at or flowing from the site. In July 2011, IDEM, the City, Ertel, and various insurance companies entered into an Administrative Agreed Order ("Administrative Order") and a Settlement and Release Agreement ("Ertel Settlement Agreement").

The Administrative Order provided that the parties desired "to settle and compromise this matter without hearing or adjudication of any issue of fact and law . . . ." Appellants' App. p. 147. One of the remedial goals of the Administrative Order was "reducing Contaminants of concern flowing off-site . . . ." Id. at 155. IDEM estimated that it would cost $860,000 to bring "the Site conditions and any associated off-Site areas to [No Further Action] status." Id.

3

One purpose of the Ertel Settlement Agreement was "for IDEM to conduct and complete future Response Actions at or in connection with the Site and close the Site, including any off-Site areas of Contamination . . . ." Id. at 151. IDEM's remedial goals included in the Ertel Settlement Agreement were "reducing the on-site Contaminants of concern to industrial default RISC cleanup levels" and "reducing Contaminants of concern flowing off-site in the groundwater to at or below MCLs or to a site specific risk level . . . ." Id. at 155. IDEM agreed to issue a No Further Action Letter ("NFA Letter") to Ertel when the remedial goals were met. Id.

As part of the two agreements, the insurance companies paid $1,000,000 to IDEM. The funds were placed in two escrow accounts—the first escrow account of $140,000 to reimburse IDEM for its past costs and a second escrow account of $860,000 for IDEM's future costs. With regard to the second escrow account, IDEM agreed not to use the "funds for any purpose other than for Response Actions at or in connection with the Site." Id. Any funds remaining after IDEM issued the NFA Letter would be surrendered to the City.

In October 2011, the trial court presiding over both civil action approved the Ertel Settlement Agreement in IDEM's civil action against Ertel and the City's civil action against Ertel. The Administrative Order was attached to the Ertel Settlement Agreement as an exhibit. In November 2012, IDEM issued the NFA Letter regarding the Ertel site. At that time, $846,000 remained in the second escrow account.

On January 29, 2013, Moran filed a petition with the Indiana Office of Environmental Adjudication ("OEA") seeking administrative review of the NFA Letter.

4

Moran argued that, in issuing the NFA Letter regarding the Ertel site, IDEM disregarded off-site migration of the contaminants that had occurred and was continuing to occur. On February 28, 2013, Threaded Rod filed a petition to intervene in Moran's objection to IDEM's issuance of the NFA Letter.[1]

In January 2013, Threaded Rod filed a petition to intervene in the civil action between IDEM and Ertel. Threaded Rod also filed a motion for a temporary restraining order, motion for preliminary injunction, a request for a hearing, and alternatively, a motion for clarification of the trial court's October 2011 order. Threaded Rod argued that the contamination on the Ertel site had migrated to the Threaded Rod site, that the $846,000 was intended to be used to clean up the Ertel site and other sites impacted by the contamination on the Ertel site, and that the funds should be preserved to address concerns on the neighboring properties. According to Threaded Rod, IDEM had abdicated its responsibility to clean up contaminants emanating from the Ertel site in violation of the trial court's October 2011 order. Moran filed a separate motion to intervene and joined in Threaded Rod's other motions. The City also filed a petition to intervene, which the trial court granted.

The trial court denied Appellants' requests for a temporary restraining order. IDEM and the City then filed objections to Appellants' remaining motions. IDEM argued that Appellants were not entitled to intervene in the action and that the trial court lacked subject matter jurisdiction because the exclusive jurisdiction to review IDEM's actions rested with the administrative process pursuant to the Administrative Orders and

[1] The current status of the OEA proceedings is not evident from the record provided to us.

5

Procedures Act ("AOPA"). The City argued that the motions to intervene were untimely and, alternatively, that Appellants were not entitled to intervene.

On April 19, 2013, the trial court issued an order denying the requests to intervene and the requests for a preliminary injunction. The trial court found that it lacked subject matter jurisdiction to address Appellants' arguments pursuant to Indiana Department of Environmental Management v. Raybestos Products, Co., 897 N.E.2d 469 (Ind. 2008), corrected on reh'g by 903 N.E.2d 471 (Ind. 2009), cert. denied. The trial court ordered IDEM to release the funds in the second escrow account to the City.[2] Appellants now appeal.

**Analysis**

*I. Subject Matter Jurisdiction*

Appellants argue that the trial court erred when it determined that it did not have subject matter jurisdiction over their claims. Because the facts relevant to this issue are not in dispute, it is a pure question of law that we review de novo. Ramsey v. Moore, 959 N.E.2d 246, 250 (Ind. 2012).

Appellants argued to both the trial court and the OEA that IDEM erred by issuing the NFA Letter. The trial court concluded that the OEA had jurisdiction, but Appellants argue that the trial court had jurisdiction because the trial court approved the Ertel Settlement Agreement. In general, the carrying out of a settlement agreement should be

---

[2] IDEM includes documents in its appendix that indicate the funds were transferred to the City on April 26, 2013. However, there is no indication that those documents were presented to the trial court. Consequently, it was improper to include the documents in the appendix, and we will not consider them on appeal.

6

controlled in the court that approved it, and the breaching of a settlement by one of the parties is actionable. Indiana Dep't of Envtl. Mgmt. v. NJK Farms, Inc., 921 N.E.2d 834, 842 (Ind. Ct. App. 2010), trans. denied. The trial court disagreed with Appellants, finding that it did not have subject matter jurisdiction and that Appellants failed to exhaust their administrative remedies.

It is well-established that, if an administrative remedy is available, it must be pursued before a claimant is allowed access to the courts. Town Council of New Harmony v. Parker, 726 N.E.2d 1217, 1224 (Ind. 2000), amended on reh'g in part, 737 N.E.2d 719 (Ind. 2000). However, the failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction. Id. The doctrine of primary jurisdiction is also relevant here. Our supreme court has noted that:

> The doctrine [of primary jurisdiction] comes into play when a claim is cognizable in a court but adjudication of the claim "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of [an] administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views." United States v. Western Pacific R.R. Co., 352 U.S. 59, 64, 77 S. Ct. 161, 165, 1 L.Ed.2d 126 (1956).

Austin Lakes Joint Venture v. Avon Utilities, Inc., 648 N.E.2d 641, 645 (Ind. 1995) (quoting Hansen v. Norfolk & Western Ry. Co., 689 F.2d 707, 710 (7th Cir. 1982)). "The doctrines of primary jurisdiction and exhaustion of remedies, therefore, are related but significantly different." Id.

"The doctrine of primary jurisdiction is not, in our view, jurisdictional but prudential; the doctrine of exhaustion of remedies, on the other hand, is jurisdictional

and, where applicable, makes a Trial Rule 12(B)(1) motion for lack of jurisdiction over the subject matter appropriate." Id. Under the doctrine of primary jurisdiction, our supreme court has held that "[i]f at least one of the issues involved in the case is within the jurisdiction of the trial court, the entire case falls within its jurisdiction, even if one or more of the issues are clearly matters for exclusive administrative or regulatory agency determination." Id. at 646. "Where at least one of the issues or claims is a matter for judicial determination or resolution, the court is not ousted of subject matter jurisdiction by the presence in the case of one or more issues which arguably are within the jurisdiction of an administrative or regulatory agency." Id. In such a case, while retaining jurisdiction, the trial court should "refer an issue or some subset of issues in the case to the expert agency for its opinion or final decision." Id.

The heart of the issue is whether the trial court properly ordered the remaining $846,000 in funds distributed to the City, which is dependent upon whether IDEM properly issued a NFA Letter regarding the Ertel property. In finding that it had no subject matter jurisdiction, the trial court relied on Raybestos and NJK Farms. In Raybestos, IDEM sent Raybestos a "Special Notice of Potential Liability" regarding the cleanup of PCBs. Raybestos, 897 N.E.2d at 471. IDEM and Raybestos entered into an administrative agreed order approved by IDEM's commissioner regarding the cleanup. Pursuant to the agreed order, Raybestos prepared a risk assessment, which concluded that the PCB levels posed no human health risk, and IDEM approved the risk assessment. IDEM suggested that Raybestos perform a "hot spot" removal rather than clean the entire site. Id. A successor IDEM commissioner disagreed, and IDEM determined that the risk

8

assessment had been approved in error. IDEM and Raybestos were unable to agree on a cleanup level, and Raybestos filed a petition for administrative review with the OEA. The OEA concluded that Raybestos had waived its right to seek review of IDEM's actions, but on judicial review, the trial court disagreed and ordered IDEM to reinstate its approval of the risk assessment. IDEM did not appeal that order.

During this time, IDEM also encouraged the EPA to require a more complete cleanup, and the EPA issued an order requiring a cleanup of the site that was substantially more expensive than the "hot spot" removal. Id. at 472. Raybestos then filed a civil complaint claiming that IDEM had breached its contract, i.e., the agreed order. Raybestos sought damages from IDEM for the more expensive cleanup and future expenses. The trial court found that IDEM's communications with EPA had breached the agreed order, and the trial court ordered IDEM to pay more than $16,000,000 in damages.

On appeal, our supreme court noted that the AOPA "establishes the exclusive means for judicial review of an agency action." Id. at 474 (citing Ind. Code § 4-21.5-5-1). Although several agencies and agency actions are exempt from the AOPA, neither IDEM nor the agreed order is among them. Id. (citing I.C. §§ 4-21.5-2-4, -5). The court found that IDEM was "plainly" an agency and that the agreed order and the communications with the EPA were agency actions. Id. Consequently, our supreme court concluded that the exclusive means for review of the agency's actions was by a petition for review to the OEA.[3] The court remanded to the trial court with instructions to

---

[3] The court also concluded that the alleged breach of the agreed order did not support a judgment for money damages and that IDEM could properly communicate with the EPA.

9

vacate the trial court's judgments in favor of Raybestos and dismiss the complaint for lack of subject matter jurisdiction.

Similarly, in NJK Farms, after NJK Farms filed a petition for judicial review regarding a landfill permit application, IDEM and NJK Farms entered into a settlement agreement filed with the trial court, and the trial court action was stayed pending completion of certain provisions of the settlement agreement. Under the agreement, NJK Farms was allowed to submit a complete permit application. After NJK Farms submitted its application and during the public comment period, the legislature passed a new statute applicable to landfills and the county where the proposed landfill was located passed comprehensive zoning regulations, which included regulations for landfills. IDEM then informed NJK Farms that it would have to submit a new application to comply with those requirements. Instead, NJK Farms filed a motion with the trial court alleging that IDEM had breached the settlement agreement. IDEM then denied the existing permit application, and NJK Farms filed a petition for review with the OEA. The trial court found that it had exclusive jurisdiction of the claims based on its control of the settlement agreement and advised the OEA of its decision. The trial court also found that IDEM had breached the settlement agreement, set the matter for a trial on damages, and certified the order for interlocutory appeal.

On appeal, we noted that, generally, the "carryout out of a settlement agreement should be controlled in the court that approved it." NJK Farms, 921 N.E.2d at 842. However, we also noted that "a settlement agreement that must be filed with and approved by a regulatory agency 'loses its status as a strictly private contract and takes on

10

a public interest gloss.'" Id. (quoting Citizens Action Coalition of Ind. v. PSI Energy, 664 N.E.2d 401,406 (Ind. Ct. App. 1996)).

We concluded that IDEM was an agency subject to AOPA and that IDEM's actions regarding the settlement agreement were "agency actions" under AOPA. Id. at 844; see I.C. § 4-21.5-2-4, -5. NJK Farms attempted to distinguish Raybestos because the settlement agreement arose out of a judicial, not administrative, proceeding. However, we did not find the distinction persuasive. We noted:

> Although the agreed order in Raybestos was entered into during the administrative proceeding rather than after the petition for judicial review was filed, we see no practical difference between the circumstances in Raybestos and the circumstances here. Under NJK's interpretation, if the parties enter into an agreement to resolve issues during the administrative process, the AOPA would apply and damages could not be awarded for a breach of the agreement; but if the parties entered into an agreement to resolve issues after a petition for judicial review was filed, the AOPA would not apply and the agency could be liable for damages under Indiana Code Section 34-13-1-1. Such an interpretation would lead to illogical results contrary to the purpose of the AOPA.

> Finally, we also note that, under NJK's interpretation, the trial court would have had exclusive jurisdiction over NJK's entire permit application process as a result of the Settlement Agreement. However, under that interpretation, the trial court would have immediate jurisdiction to review IDEM's denial of NJK's permit on any basis, such as a denial based upon technical engineering requirements. The purpose of administrative review of agency decisions is to allow the agency "to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review." Austin Lakes Joint Venture v. Avon Util., Inc., 648 N.E.2d 641, 644 (Ind. 1995) (quoting Weinberger v. Salfi, 422 U.S. 749, 765, 95 S. Ct. 2457, 2467, 45 L.Ed.2d

11

522 (1975)). Clearly, it is better for such issues to be presented in the typical administrative review process prior to consideration by the trial court. The administrative review process allows IDEM to correct its own mistakes and allows those with the requisite expertise a first look at the issues.

NJK Farms, 921 N.E.2d at 844 (footnote omitted). We concluded that NJK Farms had failed to exhaust its administrative remedies and that the trial court did not have subject matter jurisdiction. Id. at 845.

Here, Appellants argue that the Ertel Settlement Agreement is not an agency action. However, it is not the Ertel Settlement Agreement that is at issue; rather, IDEM's issuance of the NFA Letter and request that the trial court disburse the remaining $846,000 are at issue. AOPA provides that an "agency action" is any of the following: "(1) The whole or a part of an order; (2) The failure to issue an order; (3) An agency's performance of, or failure to perform, any other duty, function, or activity under this article." I.C. § 4-21.5-1-4.

We begin our analysis by noting that the trial court approved the Ertel Settlement Agreement pursuant to the statutes governing the Hazardous Substances Response Trust Fund, Indiana Code Chapter 13-25-4. This code chapter establishes a trust fund to finance the prevention and cleanup of hazardous substance releases. The chapter allows the IDEM commissioner to "proceed in court" or "issue an administrative order" to "compel a responsible person to undertake a removal or remedial action with respect to a release or threatened release of a hazardous substance from a facility or site in Indiana." I.C. § 13-25-4-9. The commissioner may also "proceed in the appropriate court to recover costs and damages for which a responsible person is liable to the state . . . ." I.C.

12

§ 13-25-4-10. Finally, the commissioner may also "enter into an agreement with one (1) or more potentially responsible persons concerning removal and remedial action at a site in Indiana." I.C. § 13-25-4-23(a). Such an agreement may be established: "(1) in an administrative order issued by the commissioner; or (2) by a consent decree entered in an appropriate court." I.C. § 13-25-4-23(e). Under the above statutes, only the trial court can order the recovery of damages, but both the trial court and the agency can address remedial action.

We first address the issuance of the NFA Letter. As in NJK Farms, Appellants' interpretation of AOPA would lead to inconsistent results and possible forum shopping. Appellants' concern is whether IDEM properly remediated neighboring properties allegedly contaminated by Ertel. Under Indiana Code Chapter 13-25-4, IDEM can enter into both administrative orders or obtain trial court orders regarding remedial action at sites. Under Appellants' interpretation, if an action concerning remediation was brought in the trial court, the trial court would enforce it; if an administrative order was entered into, the OEA would enforce it. This would lead to conflicting and inconsistent results. Moreover, here, both an administrative order and a trial court approval of the settlement were entered, and petitions to enforce the agreements were filed with both the OEA and the trial court. IDEM's performance in remediating the properties involves complex environmental engineering concepts that are better suited to review in the administrative process. As in Raybestos and NJK Farms, we conclude that IDEM's action in issuing the NFA Letter constitutes an agency action in the context of the AOPA. Consequently, the issue was required to be presented to the OEA.

13

We reach a different conclusion regarding the distribution of the remaining escrow funds. Under Indiana Code Section 13-25-4-10, only the trial court had the ability to control the recovery of damages. "An Indiana court obtains subject matter jurisdiction only through the Constitution or a statute." Parkview Hosp., Inc. v. Geico Gen. Ins. Co., 977 N.E.2d 369, 372 (Ind. Ct. App. 2012), trans. denied. The trial court obtained jurisdiction over the funds pursuant to statutory authority. Consequently, we conclude that Raybestos and NJK Farms are distinguishable here with respect to the distribution of the remaining escrow funds.

This case is similar to Fratus v. Marion Community Schools Board of Trustees, 749 N.E.2d 40 (Ind. 2001). There, retiring teachers filed a complaint against the teachers' union, alleging that it had breached its duty of fair representation, and the school board, alleging that it had breached its contract with the teachers. Our supreme court determined that the teachers' claim against the union was a matter for "exclusive" determination by the Indiana Education Employment Relations Board ("IEERB"). Fratus, 749 N.E.2d at 45-46. However, the trial court had jurisdiction over the teachers' claim against the school board. Our supreme court invoked the doctrine of primary jurisdiction and held that, "although the trial court must refer to the IEERB that portion of [t]eachers' complaint asserting claims against the [u]nion, the trial court nonetheless retains jurisdiction over the entire case until the IEERB reaches a final decision. Thereafter the trial court may address all claims properly before it." Id. at 46. Thus, the trial court was required to "suspend any action on the merits until the IEERB renders a final decision on [t]eachers' claim against the [u]nion." Id. at 47.

14

Here, pursuant to the doctrine of primary jurisdiction, because the trial court has jurisdiction over one issue in the case and the OEA has jurisdiction over a second, related issue, the trial court should retain jurisdiction over the entire case until the OEA reaches a final decision on Appellants' petitions. At that point, the trial court may make a decision regarding the disbursement of the remaining escrowed funds. We conclude that the trial court erred when it determined that it did not have subject matter jurisdiction.

## II. Intervention

Having concluded that the trial court had subject matter jurisdiction, we address Appellants' argument that the trial court erred by denying their petitions to intervene. The grant or denial of a petition to intervene is within the discretion of the trial court and is reviewed for an abuse of that discretion. Granite State Ins. Co. v. Lodholtz, 981 N.E.2d 563, 566 (Ind. Ct. App. 2012), trans. denied. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable and probable inferences to be drawn therefrom. Id.

Indiana Trial Rule 24 governs intervention as of right and provides, in part:

> Upon timely motion anyone shall be permitted to intervene in an action:
>
> * * * * *
>
> (2) when the applicant claims an interest relating to a property, fund or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect his interest in the property, fund or transaction, unless the

15

> applicant's interest is adequately represented by existing parties.

Ind. Trial Rule 24(A). Indiana cases addressing Indiana Trial Rule 24(A)(2) have traditionally adopted the three-part test followed by the Federal courts in their interpretation of its counterpart in the Federal Rules of Civil Procedure. Granite State, 981 N.E.2d at 566. This test requires that intervenors show: (1) an interest in the subject of the action; (2) disposition of the action may as a practical matter impede the protection of that interest; and (3) representation of the interest by existing parties is inadequate. Id. Whether a particular factual situation satisfies this three-part test is within the discretion of the trial court. Id.

The first element of the test is whether Appellants have "an interest" in the subject of the actions between Ertel, IDEM, and the City. IDEM and the City seem to argue that Appellants have no interest here because the Ertel Settlement Agreement and Administrative Order provide that there are no third-party beneficiaries to the agreements. However, IDEM and the City cite no relevant authority for the proposition that Appellants must be third-party beneficiaries to the agreements to have an interest in the subject of the action. Rather, our courts have required that a proposed intervenor claim "an immediate and direct interest in the proceedings." In re Paternity of E.M., 654 N.E.2d 890, 893 (Ind. Ct. App. 1995).

Appellants are adjacent property owners to the Ertel property, and they allege that their properties were contaminated by Ertel. Clearly such contamination could affect the value of their properties in many ways. In both the Ertel Settlement Agreement and the

16

Administrative Order, IDEM agreed to conduct remediation of the Ertel contaminants that flowed off-site, which would presumably include Appellants' properties. However, IDEM issued a NFA Letter without, according to Appellants, addressing the off-site contaminants. As such, we conclude that Appellants had an immediate and direct interest in the proceedings. See, e.g., In re Remonstrance Appealing Ordinance Nos. 98-004 98-005, 98-006, 98-007 & 98-008, of Town of Lizton, 737 N.E.2d 767, 769 (Ind. Ct. App. 2000) (holding that landowners had an immediate and direct interest in remonstrators' litigation where the landowners' property was annexed by the town); Heritage House of Salem, Inc. v. Bailey, 652 N.E.2d 69, 74 (Ind. Ct. App. 1995) (holding that nursing home owners had "an interest in protecting their remaining non-certified beds from becoming Medicaid certified and the litigation regarding the validity of the CON Program directly affected that interest"), trans. denied.

The second element is whether the "disposition of the action may as a practical matter impede the protection" of Appellants' interest. T.R. 24(A). IDEM issued the NFA Letter and requested that the trial court approve distribution of the remaining $846,000 pursuant to the Ertel Settlement Agreement and Administrative Order. As Appellants point out, if the escrowed funds "are distributed to the City without being used for their intended and ordered purpose," Appellants "may be prevented from recapturing those funds to clean up Ertel's contamination that is present on and below Threaded Rod's property and beyond." Appellants' Brief p. 19. Thus, the distribution of the remaining funds, which were to be used to remediate contaminants, including contaminants that flowed off-site, would impede the protection of Appellants' properties.

17

The final element is whether "representation of the interest by existing parties is inadequate." T.R. 24(A). The current parties of the two civil actions are IDEM, the City, Ertel, and various insurance companies. Ertel, having been released from liability, has no incentive to represent Appellants' interests. IDEM's and the City's interests in issuing the NFA Letter and distributing the remaining escrowed funds to the City also appear to conflict with Appellants' interests in using the remaining escrowed funds to remediate Appellants' properties. Consequently, we conclude that the representation of Appellants' interests by the existing parties is inadequate. In sum, we conclude that the trial court abused its discretion by denying Appellants' motions to intervene.

## Conclusion

The trial court erred when it determined that it did not have subject matter jurisdiction. However, under the doctrine of primary jurisdiction, this action should be stayed until the administrative action is final. We also conclude that the trial court erred by denying Appellants' motions to intervene. We reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

ROBB, J., and BROWN, J., concur.

18